IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BANCRÉDITO HOLDING CORPORATION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT, BANCRÉDITO INTERNATIONAL BANK & TRUST CORPORATION,<br><br>*Plaintiff,*<br><br>v.<br><br>DMRA LAW LLC, MARÍA A. DOMÍNGUEZ-VICTORIANO, FRANCES DÍAZ, ANA FARIA, INSURANCE COMPANIES A, B, C,<br><br>*Defendants, and*<br><br>DRIVEN ADMINISTRATIVE SERVICES, LLC AS RECEIVER FOR BANCRÉDITO INTERNATIONAL BANK & TRUST CORPORATION,<br><br>*Nominal Defendant.* | CIVIL NO.<br><br>VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT**

TO THE HONORABLE COURT:

COMES NOW Bancrédito Holding Corporation ("BHC" or the "Shareholder"), through its undersigned attorneys, and submits this Verified Shareholder Derivative Complaint against Defendants named herein for breach of fiduciary duties and states as follows:

**SUMMARY OF THE ACTION**

1. This is a shareholder derivative action brought for the benefit of Nominal Defendant Bancrédito International Bank & Trust Corporation (the "Bank" or "BIBTC").

2. This derivative action is brought, in part, against Defendant Frances Díaz ("Díaz"), the Bank's former President, CEO and former member of the Company's Board of Directors (the "Board"); Ana Faria ("Faria"), the Bank's former Chief Legal Counsel and Secretary of

Company's Board; and Defendant María A. Domínguez-Victoriano ("Domínguez"), one of the Bank's outside counsel (collectively the "Individual Defendants") seeking to remedy their breach of fiduciary duties during the period beginning September 23, 2021, through the present (the "Relevant Period").

3. The Shareholder discovered the scope of Individual Defendants' breach of fiduciary duties on or about September 2022.

4. Shareholder's access to the Bank's information has been limited since August 2022.

5. As a result of the foregoing, or at least in part, the Bank suffered economic damages and is now subject to a receivership (and liquidation) by the Office of the Commissioner of Financial Institutions ("OCIF") of Puerto Rico and other claims against the Bank and its Directors and Shareholder.

6. Díaz breached her duties of loyalty, care and good faith by: (i) failing to make full disclosure concerning a criminal investigation while remaining employed as an officer of the Bank; (ii) circumventing the Bank's policies in her benefit, and (iii) misappropriation of the Bank's moneys.

7. Domínguez breached her duties of loyalty, care and good faith by (i) representing Díaz in a matter adverse to the Bank; (ii) failing to obtain the Bank's informed consent to represent Díaz in a matter adverse to the Bank; (iii) utilizing privileged and confidential information acquired through her representation of the Bank to further Díaz's interests at the expense of the Bank; and (iv) circumventing the Bank's policies in her benefit.

8. Faría breached her duties of loyalty, care and good faith by (i) circumventing the Bank's policies to Díaz's benefit; (ii) facilitating and executing an Engagement Letter in connecting with Domínguez's representation of Díaz at the Bank's expense; (iii) failing to obtain the necessary approvals to retain Domínguez.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) (1). There is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has jurisdiction over each Defendant named herein because each Defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by this Court.

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because (i) one or more of Defendants either reside in or maintain executive offices in this District; (ii) a substantial portion of the transactions and wrongs complained of herein—including Defendants' primary participation in the wrongful acts detailed herein and aiding in violation of fiduciary duties owed to Bank—occurred in this District; (ii) and Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

## PARTIES

12. Plaintiff BHC is currently and has continuously been the sole stockholder of the Bank. Plaintiff is a corporation duly registered under the laws of the State of New York with its principal office located at 575 5th Avenue, Floor 14th, New York, NY 10017.

13. Nominal Defendant, the Bank, is a corporation duly registered under the laws of the Commonwealth of Puerto Rico, with its principal office located at 250 Ave. Luis Muñoz Rivera, 14th Floor, Suite 1410, San Juan, 00918, Puerto Rico.

14. Driven Administrative Services, LLC ("Driven" or the "Receiver") is a Limited Liability Company duly registered under the laws of the Commonwealth of Puerto Rico, with its principal office located at B7 Tabonuco Street, Suite 302, Guaynabo, PR 00968. Driven is the

3

Bank's Receiver.

15. Defendant Díaz is domiciled in Puerto Rico and was both a member of the Company's Board and a member of management, as CEO and President for the Relevant Period. Upon information and belief, Díaz resides in Sabanera, Dorado, Puerto Rico.

16. Defendant Faría is domiciled in Puerto Rico was both the Bank's Chief Legal Counsel and Secretary of Company's Board for the Relevant Period. Upon information and belief, Faría's address is 250 Sol Street, Apt. 4, San Juan, Puerto Rico 00901.

17. Defendant DMRA Law LLC ("DMRA") is a Limited Liability Company duly registered under the laws of the Commonwealth of Puerto Rico.  Upon information and belief, all members of DMRA are domiciled in Puerto Rico.  The Puerto Rico office is located at Capital Center Building, Torre Sur, Suite 1101, San Juan, PR 00918. DMRA served as outside counsel for the Bank for the Relevant Period.

18. Upon information and belief, Defendant Domínguez is domiciled in Puerto Rico. Domínguez is a member and employee of DMRA and as such served as outside counsel for the Bank for the Relevant Period. Domínguez, a former federal prosecutor, is licensed to practice in Florida and Connecticut, as well as various federal district courts, including the United States District Court for the District of Puerto Rico. However, she is <u>not</u> a member of the Puerto Rico (State) Bar, as regulated by the Puerto Rico Supreme Court.

19. Defendants Insurance Companies A, B & C—whose names are unknown—are insurance entities that have insurance policies issued in favor of the codefendants Domínguez and DMRA, that cover the damages of these defendants, that are organized pursuant to the laws of the Commonwealth of Puerto Rico, and that are jointly and severally responsible and liable to the Bank for the damages claimed in this Complaint.  Defendants D, E & F are individuals or entities that may be responsible and liable to the Bank for the damages claimed in this Complaint.

**DERIVATIVE AND PRE-SUIT DEMAND ALLEGATIONS**

20. BHC brings this action derivatively in the right and for the benefit of the Bank to redress injuries suffered, and to be suffered, as a direct result of breach of fiduciary duties, and unjust enrichment of Individual Defendants.

21. BHC is the sole shareholder of the Bank, was the sole shareholder of Bank at the time of the wrongdoing alleged herein and has been the sole shareholder of the Bank continuously since that time.

22. BHC will adequately and fairly represent the interests of the Bank and its sole shareholders—BHC—in enforcing and prosecuting its rights.

23. The Bank is named as a nominal defendant in this case solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have and, for purposes of this derivative action, there's antagonism between the Bank and BHC.

24. The wrongful acts complained of herein subject—and will continue to subject —the Bank to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

25. On or about August 9, 2022, BHC—along with the Bank and OCIF—entered a plan of liquidation (the "Liquidation Plan") and Driven was appointed as the administrator of the Bank for the duration of the liquidation process.

26. On January 11, 2023, OCIF appointed Driven as Receiver for BIBTC.

27. On November 17, 2023, the Shareholder served Driven with a Demand Letter requesting that Driven, as BIBTC's Receiver, file suit against DMRA, Domínguez, Díaz, and Faría for breach of fiduciary duties, nullity of contract, and unjust enrichment under Puerto Rico law. *See* Exhibit 1.[1]

---

[1] Exhibit 1 will be filed as a separate docket entry along with a Motion to Restrict given that Exhibit 1 contains confidential information that BHC respectfully submits should be restricted to case participants pursuant to Standing Order No. 9.

28. On December 20, 2023, Driven <u>rejected</u> BHC's presuit demand. In its response, Driven stated that it "determined that the claims stated in [BHC's] Demand Letter are unfounded and prosecuting such an action would result in the unnecessary dissipation of BIBTC's assets which are crucial to complete the remaining matters in the liquidation process."

## **SUBSTANTIVE ALLEGATIONS**

29. On July 24, 2013, Díaz was offered the position of General Manager of the Bank.

30. Díaz's employment offer with the Bank was conditioned to the signing of a *Non-Disclosure of Confidential Information Agreement* in protection of the Bank's businesses.

31. Díaz accepted the employment offer on July 25, 2013, and joined the Bank on August 19, 2013, as General Manager.

32. Beginning in December 2019, Díaz was appointed President and Chief Executive Officer of the Bank, as well as one of its directors.

33. Beginning in 2018, Díaz was also a member of the Audit Committee, the Executive Committee the BSA/AML Committee of the Bank. As the Bank's President and CEO, Díaz oversaw all aspects of the Bank's operations and procedures. As the CEO of the Bank, she was responsible for operations and policy. These operations include how the bank handles business, as defined by OCIF and the Federal Reserve, and the Bank's policies. Additionally, she was answerable to the customers, shareholders, OCIF, and the Federal Reserve Bank for violations of these policies. Moreover, she was responsible for the overall success of the operations and policy of the Bank.

34. Since or around 2015, the Bank was subject to a series of routine Examinations made by OCIF, which resulted in a Consent Order that was lifted in April 2018.

35. As CEO and President of the Bank, Díaz's duties also included complying with OCIF's requests for documents and implement policies of improvement to fully comply with OCFI's demands.

36. In response to OCIF's examinations and Consent Order, beginning 2015, the Bank retained the law firm McConnell Valdés LLC ("McV") as outside counsel to provide legal advice in connection therein.

37. One of McV's attorneys assigned to oversee OCIF's examinations and Consent Order was Domínguez.

38. Even though Domínguez is not a licensed attorney in Puerto Rico, she provided legal counsel to the Bank in the matters before OCIF and attended multiple meetings with OCIF's representatives acting as legal counsel of the Bank.

39. Furthermore, on May 22, 2018, while working for McV, Domínguez sent a letter to the Federal Bureau of Investigation ("FBI"), Hato Rey, Puerto Rico Office, with the caption: "Letter of Legal Representation- Bancrédito."

40. In the letter dated May 22, 2018, Domínguez stated the following:

Please be advised that the undersigned counsel represent [*sic*] Bancrédito International Bank ("Bancrédito"), an International Banking entity (IBE), established in 2008 under the laws of the Commonwealth of Puerto Rico. Bancrédito is regulated by the Office of the Commissioner of Financial Institutions of Puerto Rico (OCIF). The undersigned counsel also represent [*sic*] the members of Bancredito's [*sic*] Board of Directors and Bancredito's [*sic*] employees.

41. On July 1st, 2019, OCIF began another Examination of the Bank regarding independent Testing, Risk Assessment, Customer Due Diligence, Enhanced Due Diligence, and Suspicious Activity.

42. On or about November 2020, the Bank retained Domínguez, now through her own law firm, DMRA, as outside counsel to provide legal advice in connection with the ongoing Examinations brought by OCIF. Upon information and belief, Domínguez and/or DMRA never terminated this engagement.

43. In November 2020, Domínguez provided Díaz a "Memorandum" addressing the Examinations and Consent Orders issued by OCIF noting the following:

> We suggest that Bancrédito[2] begin to take a more assertive posture in defending against the baseless harassment by OCFI [*sic*], using the guise of bona fide Examinations as a mechanism to oppress Bancrédito and disparage its reputation. The facilitators of this scheme should be aware that their actions have invited scrutiny and that Bancrédito will avail itself of all available legal mechanisms to vindicate its reputation and protect itself from further harassment and injury.
>
> Bancrédito is a responsible institution that has a robust compliance program and a documented history of operating legally, ethically, and responsibly. The implacable actions of OCFI in subjecting the institution to a series of unwarranted Examinations and drowning the institution in expansive and unreasonable document requests, should not be allowed to continue with impunity.

44. Even though Domínguez is not admitted to practice law in Puerto Rico—barred from offering any kind of legal advice in Puerto Rico (other than her licensed practice in federal court and/or federal agencies)—she represented and provided legal advice to the Bank on matters related to Puerto Rico laws and regarding administrative proceedings before OCIF, a Puerto Rico government agency.

45. On September 23, 2021, Domínguez, through DMRA, and attorney Carlos A. Pérez Irizarry, provided the Bank, through its Chief Legal Counsel, an Engagement Letter to represent Díaz in a criminal investigation against her in the United States District Court for the District of Puerto Rico (the "Engagement Letter").

46. In the Engagement Letter, Domínguez stated that:

> In light that the conduct of Miss Fossé,[3] that is the object of the criminal investigation, arises of her position as Executive Director of Bancrédito,[4] it is our understanding that the bank will assume the costs of her legal representation.

---

[2] To assist this Court and for ease of reference, BHC respectfully notes that the Memorandum refers to the Bank.
[3] To assist this Court and for ease of reference, BHC respectfully notes that the letter refers to Díaz.
[4] To assist this Court and for ease of reference, BHC respectfully notes that the letter refers to the Bank.

8

47. According to the Engagement Letter, the attorneys' fees for representing Díaz were set at a flat fee of $200,000.

48. The Bank's Chief Legal Counsel signed the aforementioned Engagement Letter.

49. Among other policies, the Bank had an Accounts Payable & Purchases Policy (the "AP Policy").

50. The AP Policy, in relevant part, "provides accounting guidance for the recognition of all major expenses that relate, directly or indirectly, to purchases in accordance with United States Generally Accepted Accounting Principles . . . ."

51. The AP Policy's purpose in part "is to communicate consistent guidance in this area of accounting; timely payments of accounts owed by the Bank are an integral element of a safe and sound operation. In addition, banking regulators must verify that prudent internal controls are in place to ensure that payables and expenditures are clearly in the Bank's best interest and are appropriate, given the financial condition and scope of operations."

52. The AP Policy also provides, in relevant part, that "proper internal controls will be followed to ensure that only valid and authorized payables and services are recorded and paid."

53. Díaz and Faría knew or should have known of the AP Policy.

54. The AP Policy further provides that Purchases over $150,000 must be authorized by <u>both the President/CEO and the COO</u>.

55. In relevant part, the AP Policy further provides that "policy exceptions will be approved by the Executive Committee and ratified by Board of Directors but under no circumstances should exceptions deviate from USGAAP guidelines."

56. Therefore, payment of the Engagement Letter would not have been subject to approval by Díaz alone, but rather would have also required approval of the COO as well.

57. Instead of obtaining the requisite approvals, Díaz concealed the Engagement Letter from the COO and the Board.

58. And instead of submitting one invoice in connection with the Engagement Letter—that surely would have been subject to appropriate scrutiny under the AP Policy—Faría, and Domínguez submitted multiple individual invoices for smaller amounts.

59. On September 24, 2021, a payment was issued in the amount of $25,000.00 to DMRA with the note "Inv 17 sept 2021 legal services to engagement."

60. On September 27, 2021, another payment was issued in the amount of $50,000.00 to DMRA.

61. On November 8, 2021, a payment was issued in the amount of $25,000.00 to DMRA.

62. In sum, upon information and belief, DMRA received at least $100,000 in connection with legal fees related to Díaz's representation.

63. DMRA, Díaz, Faría, and Domínguez converted, misappropriated, or otherwise purported to exercise unlawful dominion and control over monies belonging to the Bank, by among other things, causing numerous payments to be issued from the Bank in violation of the AP Policy.

64. Individual Defendants knowingly withheld this information from the Board in furtherance of a broader scheme to protect Díaz in her personal capacity at the Bank's expense.

65. Faría and Díaz failed to inform the COO and the Board of their unilateral decision to retain the services of one of the Bank's outside counsel, Domínguez, to represent Díaz in the criminal investigation against her at the Bank's expense. This while Díaz was still employed as an officer of the Bank.

66. Faría and Díaz—whom should have been aware or were aware of the AP Policy—facilitated a scheme in which Díaz was represented in the criminal investigation by one of the Bank's counsel, Domínguez, without the Bank's knowledge as to the scope of the engagement and at the Bank's expense. Accordingly, the execution of the Engagement Letter did not comply with the required approvals of both the President/CEO and COO.

67. Domínguez did not disclose nor seek to obtain written consent from the Board or the Directors to represent Díaz in the criminal investigation.

68. It was not until months later that the Shareholder learned about the scope of Domínguez's Engagement Letter to represent Díaz in a criminal investigation and how Bank's moneys were used to pay for said engagement.

69. These details were withheld from the Shareholder by Bank officers, and it was not until on or about September 2022 that the Shareholder learned about them through an independent audit.

70. On February 25, 2022, Díaz abruptly resigned alleging "extraordinary circumstances" that, according to her, hindered her ability to accomplish her functions duly and responsibly in the Bank.

71. On February 28, 2022, Díaz entered into a plea agreement,[5] which Domínguez signed as counsel of Díaz.

72. In the plea agreement, Díaz admitted her guilt as charged in the Information.

73. While she was employed by the Bank, Díaz never disclosed the scope of the investigation to the Bank. She should have resigned as soon as her personal interests conflicted with her duty as an officer of the Bank. Instead, she continued collecting a salary and benefits from the Bank, only to resign three days before she entered into a plea agreement.

74. Furthermore, according to Díaz, Domínguez instructed her not to disclose to the Bank or its Directors the particulars of the criminal investigation or the plea agreement. Since before her engagement to represent Díaz, Domínguez represented the Bank. Upon information and belief, that representation was never terminated. Consequently, she had a duty of loyalty to the Bank. In case of a conflict between her duties to the Bank and Díaz, Domínguez had to resign.

---

[5] BHC requests this Court to take judicial notice of USA v. Frances M. Díaz, Crim. No. 085 (FAB), Docket #5.

75. On or about August 9, 2022, BHC—along with the Bank and OCIF—entered a Liquidation Plan which, *inter alia*, appointed Driven as administrator of the Bank.

### COUNT I
### Breach of Fiduciary Duty: Good Faith and Duty of Loyalty
### (Against Díaz, Faría and Domínguez)

76. BHC incorporates and re-alleges the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77. Díaz was the Bank's President and CEO and Board member during the Relevant Period.

78. Faría was both the Bank's chief Legal Counsel and Secretary of the Board for the Relevant Period.

79. Domínguez was one of the Bank's outside counsel.

80. All attorneys owe duties to their clients, including but not limited to continued confidentiality, and the duty to not represent other parties with adverse interests absent the informed consent of the client.

81. Domínguez did not obtain the Bank's informed consent nor a waiver of conflict to represent Díaz in a matter adverse to the Bank.

82. Upon information and belief, Domínguez used privileged and confidential information she acquired through her representation of the Bank to further Díaz's interests at the expense of the Bank.

83. At all relevant times, Faría, Díaz, and Domínguez owed a fiduciary duty to the Bank, including duties of loyalty and candor.

84. The Bank deposited its trust and confidence in Díaz, Faría, and Domínguez to provide advice and counsel and to protect its interests.

85. Faría, Díaz and Domínguez accepted the Bank's trust and assumed a duty to advise, counsel and protect the interests of the Bank.

86. Faría, Díaz and Domínguez breached their fiduciary duties by, *inter alia*, failing to protect the Bank's interests, self-dealing, and breaching the AP Policy by hiding the conflict representation of Díaz from the Bank while having the Bank unknowingly pay for it.

87. As a direct and proximate result of their breach, the Bank suffered damages.

## COUNT II
## Nullity of Contract
### (Against DMRA, Domínguez, Faria and Díaz)

88. BHC incorporates and re-alleges the allegations set forth in paragraphs 1 through 87 above as if fully set forth herein.

89. According to the AP Policy Purchases, the Engagement Letter required authorization of both the Bank's President/CEO and the COO.

90. The Engagement Letter was not authorized by the COO.

91. The Engagement Letter was signed solely by Faria, the Bank's former Chief Legal Counsel, who had no authority to sign it without first obtaining the required approvals under the AP Policy.

92. Domínguez did not obtain the Bank's informed consent nor a waiver of conflict to represent Díaz in a matter adverse to the Bank.

93. Faría, Díaz, and Domínguez knowingly and intentionally concealed from the COO the execution of the Engagement Letter and the scope of representation.

94. Faría, Díaz knew of and facilitated the execution of an Engagement Letter to retain Domínguez—the Bank's counsel—to represent Díaz in the criminal investigation. The Bank's governing body and the COO were not made aware of the Engagement or its scope, nor were they aware that Dominguez represented Diaz as part of an investigation—whose underlying facts also involved the Bank—at the Bank's expense.

95. Díaz, Faria, DMRA, and Domínguez concealed the Engagement Letter from the Bank's COO by circumventing the AP Policy. The execution of the Engagement Letter did not

comply with the required approvals of both the President/CEO and COO as set forth in the AP Policy and, thus, their actions constitute "dolo."

96. As a result of their actions, the Bank unknowingly paid for Díaz's attorney's fees.

97. Because the Engagement Letter was executed in contravention of the AP policy requiring both the approval of the President/CEO <u>and</u> the Bank's COO, the Engagement Letter is null and void.

## COUNT III
## Unjust Enrichment
### (Against DMRA, Domínguez, and Díaz)

98. BHC incorporates and re-alleges the allegations set forth in paragraphs 1 through 97 above as if fully set forth herein.

99. During the Relevant Period, Díaz, DMRA and Domínguez unjustly enriched themselves by wrongfully converting, taking, utilizing the moneys of the Bank.

100. Such acts and omissions leading to the DMRA's, Díaz's and Domínguez's unjust enrichment were the actual and proximate cause of harm to the Bank.

101. Accordingly, DMRA and Domínguez are liable in damages to the Bank amounting to at least $100,000, the exact amount to be proven at trial, arising out of said defendants' unjust enrichment.

## PRAYER FOR RELIEF

WHEREFORE, BHC demands judgment for the benefit of Driven as Receiver for Nominal Defendant Bancrédito International Bank & Trust Corporation as follows:

- Directing Individual Defendants to account to Bank for all damages sustained or to be sustained by the Bank by reason of the wrongs alleged herein.

- Deem the Engagement Letter null.

- Awarding the Bank restitution from the Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants.

- Awarding BHC, the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses.

- Granting such other and further relief as the Court may deem just and proper.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 23rd day of January, 2024.

**ESTRELLA, LLC**
s/Alberto G. Estrella
Alberto G. Estrella, Esq. (USDC-PR Bar No. 209804
USDC-PR Bar No. 209804
E. agestrella@estrellallc.com

s/Eddalee Quiñones-Pedrogo
Eddalee Quiñones-Pedrogo
USDC-PR Bar No. 305906
E. equinones@estrellallc.com

s/Stephanie M. Vilella
Stephanie M. Vilella
USDC-PR Bar No. 308603
E. svilella@estrellallc.com

P. O. Box 9023596
San Juan, Puerto Rico 00902-3596
T. (787) 977-5050 F. (787) 977-5090

*Counsel for Bancrédito Holding Corporation*