**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

BANCRÉDITO HOLDING CORPORATION, DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT, BANCRÉDITO INTERNATIONAL BANK & TRUST CORPORATION,

*Plaintiff*

v.

DMRA LAW LLC, MARÍA A. DOMÍNGUEZ-VICTORIANO, and FRANCES DÍAZ, ANA FARIA, INSURANCE COMPANIES A, B, C

*Defendants, and*

DRIVEN ADMINISTRATIVE SERVICES, LLC AS RECEIVER FOR BANCREDITO INTERNATIONAL BANK & TRUST CORPORATION

*Nominal Defendant.*

Case No. 24-cv-01036

**MOTION TO DISMISS**

DMR LAW LLC (previously DMRA Law LLC, "DMR") and María A. Domínguez-Victoriano ("Domínguez") (collectively, "Defendants"), move to dismiss the Verified Complaint (Docket 3) (the "Verified Complaint") filed derivatively by Bancrédito Holding Corporation ("BHC" or "Plaintiff") on behalf of nominal defendant Bancrédito International Bank & Trust Corporation (the "Bank") without prejudice under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or, alternatively, with prejudice under Fed.R.Civ.P. 12 (b)(6) for failure to state a claim upon which relief can be granted.

## Preliminary Statement

This action should be dismissed without prejudice because the court lacks subject matter jurisdiction. No federal question has been pleaded, and the case lacks complete diversity of citizenship, as BHC is a Florida citizen and one of the members of DMR is a Florida citizen.

Alternatively, the Verified Complaint should be dismissed in its entirety with prejudice because, after having its pre-suit demand rejected by the Bank's receiver—and absent any allegation that this decision was not a valid exercise of the receiver's business judgment—Plaintiff lacks the legal managerial power to continue with this derivative action.

Moreover, Count I of the Verified Complaint pleads a breach of fiduciary duty against Domínguez and Co-Defendants Frances Díaz ("Díaz") and Ana Faría ("Faría"), which is a claim sounding in tort and as such carries a one-year statute of limitations. The statute of limitations accrued on February 28, 2022, the day Plaintiff learned or should have learned that Domínguez purportedly breached her fiduciary duty, which allegedly caused "proximate damages," as pled in the Verified Complaint. Because the one-year term elapsed before this action was instituted, Count I should be dismissed with prejudice.

In addition, Count II of the Verified Complaint pleads nullity of contract based on "dolo", which is a type of fraud. However, Plaintiff fails to state with particularity the circumstances constituting fraud, as required by Fed.R.Civ.P. 9(b). For that reason, Count II should be dismissed with prejudice.

Lastly, Count III of the Verified Complaint pleads unjust enrichment against DMR, Domínguez and Díaz. The Verified Complaint, however, makes a claim under other legal provisions (the breach of fiduciary duty and "dolo" claims mentioned above) for the same facts,

and that precludes the application of the unjust enrichment doctrine as a matter of law. Therefore, Count III should also be dismissed with prejudice.[1]

**Argument**

**This court lacks subject matter jurisdiction.**

BHC invokes complete diversity of citizenship under 28 U.S.C. § 1332 as the basis of this court's subject matter jurisdiction. Docket 3, p. 3, ¶ 9. Complete diversity of citizenship, however, does not exist and as such this case should be dismissed without prejudice. Versatech, Inc. v. Fla. Caribbean Distillers, LLC., 511 F. Supp.3d 139, 142 and 145 (D.P.R. 2020); see Torres-Fuentes v. Motorambar, Inc., 396 F.3d 474, 475–76 (1st Cir. 2005).

"[A] corporation shall be deemed to be a citizen of every State . . . where it has its principal place of business[.]" 28 U.S.C.A. § 1332(c)(1). In a separate action before this court, BHC stated (under oath) in its Verified Complaint that its "principal place of business is Florida." Case 3:24-cv-01039-CVR, Docket 1 at p. 3, ¶ 1, and declaration under penalty of perjury at p. 36.[2] Thus, BHC is a Florida citizen.

DMR's citizenship, in turn, is determined by the citizenship of each of its members because it is a limited liability company. Berkley Nat'l Ins. Co. v. Atl.-Newport Realty LLC, 93 F.4th 543, 549 (1st Cir. 2024) (an LLC has the "'citizenship of all of' [its] members") (*citing* Pramco, LLC

[1] Defendants accept the well-pleaded facts of the Verified Complaint for purposes of this motion only and will deny all claims if it becomes necessary to file a responsive pleading.

[2] "In conducting a jurisdictional inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, hold an evidentiary hearing, and hear testimony in order to determine its own jurisdiction." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 34 (1st Cir. 2008) (*citing* Valentín v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001)). "The Court is not restricted to the face of the pleadings but may consider extra-pleading materials, such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction." Versatech, Inc., LLC., 511 F. Supp.3d at 142 (internal quotation marks and citations omitted).

ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc., 435 F.3d 51, 54 (1st Cir. 2006)). And the citizenship of each of its members is determined by their domicile. Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991) (citations omitted). One of DMR's members, Mr. Juan Carlos Ramos Rosado, is domiciled in Florida. See **Exhibit A** and corresponding attachments. Thus, DMR is also a citizen of Florida and that renders this case without complete diversity of citizenship. Versatech, Inc., LLC., 511 F. Supp.3d at 145. Accordingly, this case should be dismissed without prejudice. Id.

Alternatively, this case should be dismissed with prejudice for the following reasons.

**Plaintiff lacks legal managerial power to file a derivative action on behalf of the nominal defendant.**

As the First Circuit has emphasized, "[a] shareholder derivative action is an action of last resort." Gonzalez Turul v. Rogatol Distributors, Inc., 951 F.2d 1, 2 (1st Cir. 1991); In Re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973). "When shareholders undertake such an action it implies that the corporation is unwilling or unable to conduct a suit on its own behalf. Clearly, it should first be ascertained whether the corporation is unwilling to undertake the action." Gonzalez Turul, 951 F.2d at 2; Kauffman, 479 F.2d at 263.

For this reason, Fed.R.Civ.P. 23.1(b)(3) requires the complaint in a shareholder derivative action to:

> (3) state with particularity:
>> (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
>> (B) the reasons for not obtaining the action or not making the effort.

Similarly, Puerto Rico's General Corporations Act, which was modeled after the Delaware General Corporation Law, provides that "[i]n a derivative action, the complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or

member or the reasons for not making the effort." P.R. Laws Ann. T. 14, § 4005; see TC Invs., Corp. v. Becker, 733 F. Supp. 2d 266, 282 (D.P.R. 2010) ("[B]ecause Puerto Rico corporate law was modeled after Delaware corporate law, the court considers Delaware law for evaluating whether the claims are derivative."); see also Wiley v. Stipes, 595 F.Supp.2d 179, 185 (D.P.R.2009) (*citing* Gonzalez Turul, 951 F.2d at 3 n. 4) (turning to Delaware corporate law for the test of demand futility).

Accordingly, "a shareholder seeking to assert a cause of action belonging to the corporation must state with particularity in the complaint either that the corporation declined to protect its own interests after suitable demand was made on the board of directors or that such a demand would have been futile." Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan v. UBS Fin. Servs. Inc. of Puerto Rico, 704 F.3d 155, 159 (1st Cir. 2013); Gonzalez Turul, 951 F.2d at 2 (1st Cir. 1991); Wiley, 595 F. Supp.2d at 184-185. The First Circuit "vigorously enforces this requirement and will dismiss derivative actions when plaintiffs do not comply." Gonzalez Turul, 951 F.2d at 2 (citations omitted).

Fed.R.Civ.P. 23.1(b)(3) "requires that the complaint in a derivative action allege the facts that will enable a federal court to decide whether the demand requirement has been satisfied." Cordts-Auth v. Crunk, LLC, 815 F. Supp.2d 778, 794 (S.D.N.Y. 2011); see Union de Empleados de Muelles de Puerto Rico PRSSA Welfare Plan, 704 F.3d. at 163. To that end, "it is clear that the 'particularity' must appear in the pleading itself; the stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case." Gonzalez Turul, 951 F.2d at 3 (citation omitted). "Before deciding substantively whether demand was required under the relevant state law, it is imperative that the trial court be provided with the necessary facts in the pleadings." Id.

As stated above, a shareholder derivative action is exceptional, as "it is normally the directors, not the stockholders, who conduct the affairs of the company. Hence, to be allowed, sua sponte, to place himself in charge without first affording the directors the opportunity to occupy their normal status, a stockholder must show that his case is exceptional." Kauffman, 479 F.2d at 263. "His initial burden is to demonstrate why the directors are incapable of doing their duty, or as the Court has put it, to show that 'the antagonism between the directory and the corporate interest . . . be unmistakable.'" Id., (*citing* Delaware & Hudson Co. v. Albany & Susquehanna R. R., 213 U.S. 435, 447 (1909)). Therefore, "[t]he demand requirement is not a reasonless procedural formality. It ensures that under normal circumstances the directors will manage litigation in the best interests of the company and prevents shareholders from asserting frivolous or strike suits." Garcia v. Carrion, No. CIV 09-1507 JAG, 2010 WL 3662593, at *11 (D.P.R. Aug. 11, 2010) (*citing* McMullin v. Beran, 765 A.2d 910, 916–17 (Del.Super. 2000) and Ryan v. Gifford, 918 A.2d 341, 352 (Del. Ch. 2007)).

In line with the above, even after meeting the demand requirement, a shareholder is not automatically authorized to file a derivative action on behalf of the corporation. In fact, "[o]rdinarily, it is only when demand is excused that the shareholder enjoys the right to initiate 'suit on behalf of his corporation in disregard of the directors' wishes.'" Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 96 (1991) (*citing* R. Clark, Corporate Law § 15.2, p. 640 (1986)). As the Supreme Court of the United States has held, "[t]he purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." Kamen, 500 U.S. at 96. (*citing* Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 533

(1984) and Corbus v. Alaska Treadwell Gold Mining Co., 187 U.S. 455, 463 (1903)) (quotation marks omitted).

Art. 4.03 of Puerto Rico's General Corporations Act incorporates the business judgment rule as the standard for determining directors' or officers' liability arising from the discharge of their functions. See P.R. Laws Ann. T. 14, § 3563;[3] see also Sebastián J. Sánchez Esteve, *Fiduciary Duties: Overlooked Factor in Corporate Decision-Making*, 13 U. Puerto Rico Bus. L.J. 71, 77 (2022).

As this court has recognized, "the demand requirement of Rule 23.1 arises from the fundamental principle that the board of directors manages the business and affairs of a corporation, including decisions of whether to bring suit on behalf of the corporation." In re First Bancorp Derivative Litig., 465 F. Supp. 2d 112, 118 (D.P.R. 2006). Accordingly, "[t]o bring a derivative claim, a plaintiff must overcome the powerful presumptions of the business judgment rule." In re First Bancorp Derivative Litig., 465 F. Supp. 2d 112, 118 (D.P.R. 2006) (*citing* Rales v. Blasband, 634 A.2d 927, 933 (Del. 1993)) (quotation marks omitted). Namely, a plaintiff shareholder must overcome the "presumption that in making a business decision, directors acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." Fed. Deposit Ins. Corp. v. Arrillaga-Torrens, 212 F. Supp. 3d 312, 341 (D.P.R. 2016); In re First Bancorp Derivative Litig., 465 F. Supp. at 118. "Plaintiff must overcome the

[3] "The directors and officers shall be bound to dedicate to the affairs of the corporation and to the exercise of their duties the attention and care which in a similar position and under analogous circumstances a responsible and competent director or officer would execute in applying his/her business judgment in good faith or his/her best judgment in the case of nonprofit corporations. Only gross negligence in the exercise of the duties and obligations mentioned above shall result in personal liability." P.R. Laws Ann. T. 14, § 3563.

presumption with competent proof predicated on the substantive elements of the claim." Fed. Deposit Ins. Corp., 212 F. Supp. 3d at 341.

Courts also apply the business judgement rule in reviewing a board's refusal to act pursuant to a shareholder's demand to file a lawsuit. See Zapata Corp. v. Maldonado, 430 A.2d 779, 784 & n. 10 (Del. 1981); see also Aronson v. Lewis, 473 A.2d 805, 813 (Del.1984), overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del.2000).[4] Therefore, "if [after receiving the demand] the board declines to sue, the courts will not entertain the shareholder's derivative suit unless the board's decision can be proved not to have been a valid exercise of business judgment." In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d 47, 67 n. 11 (1st Cir. 2007) (*citing* Aronson, 473 A.2d at 813).

Once the board rejects a shareholder's demand to sue, "the shareholder lacks the legal managerial power to continue the derivative action, since that power is terminated by the refusal." Aronson, 473 A.2d at 813 (*citing* Zapata Corp., 430 A.2d at 784). If shareholders then attack the board's decision not to sue as improper, "the board's decision falls under the 'business judgment' rule and will be respected if the requirements of the rule are met." Zapata Corp., 430 A.2d at n. 10. In order to rebutt the striog presumption established in favor of the board, plaintiff must "allege facts with particularity indicating that the [corporation's] directors were tainted by interest, lacked independence, or took action contrary to [the corporation's] best interests in order to create a

[4] Because Puerto Rico corporate law was modeled after Delaware corporate law, both this court and the First Circuit have turned to Delaware law for evaluating whether the claims are derivative. See TC Invs., Corp., 733 F. Supp. 2d at 282; Wiley, 595 F.Supp.2d at 185 (*citing* Gonzalez Turul, 951 F.2d at 3 n. 4 (1st Cir.1991)) (turning to Delaware corporate law for the test of demand futility in derivative suits because Puerto Rico law does not specifically elaborate those requirements); Marquis Theatre Corp. v. Condado Mini Cinema, 846 F.2d 86, 91 (1st Cir.1988) (turning to Delaware corporate law to determine the definition of the business judgment rule under Puerto Rico corporate law).

reasonable doubt as to the applicability of the business judgment rule." Aronson, 473 A.2d at 818; see also Morefield v. Bailey, 959 F. Supp. 2d 887, 898 (E.D. Va. 2013) ("Although this reasonable doubt standard initially arose in the context of demand futility, Delaware law applies this heightened pleading requirement to wrongful refusal situations as well, as both situations are subject to a rebuttal of the business judgment rule and its protections of corporate decisions."). However, "[a]bsent a wrongful refusal, the stockholder in such a situation simply lacks legal managerial power." Id. at 784.

In the present case, according to Plaintiff's Verified Complaint, "[o]n or about August 9, 2022, BHC—along with the Bank and OCIF—entered a plan of liquidation (the "Liquidation Plan") and Driven was appointed as the administrator of the Bank for the duration of the liquidation process[,]" and "[o]n January 11, 2023, OCIF appointed Driven as Receiver for BIBTC." Verified Complaint, at ¶¶ 25 & 26.

To satisfy Fed.R.Civ.P. 23.1(b)(3)'s demand requirement, plaintiff alleges that "[o]n November 17, 2023, the Shareholder served Driven with a Demand Letter requesting that Driven, as BIBTC's Receiver, file suit against DMR, Domínguez, Díaz, and Faría for breach of fiduciary duties, nullity of contract, and unjust enrichment under Puerto Rico law." Id., at ¶ 27. Nonetheless, "[o]n December 20, 2023, Driven rejected BHC's presuit demand." Id., at ¶ 28 (emphasis in the original text). Moreover, Plaintiff alleges that "[i]n its response, Driven stated that it 'determined that the claims stated in [BHC's] Demand Letter are unfounded and prosecuting such an action would result in the unnecessary dissipation of BIBTC's assets which are crucial to complete the remaining matters in the liquidation process.'" Id.

As previously discussed, "it is normally the directors, not the stockholders, who conduct the affairs of the company." Kauffman, 479 F.2d at 263. The demand requirement precisely

"ensures that under normal circumstances the directors will manage litigation in the best interests of the company and prevents shareholders from asserting frivolous or strike suits." Garcia, 2010 WL 3662593, at *11. Accordingly, the plaintiff in a derivative action must "state with particularity . . . the reasons for not obtaining the [desired] action [from the directors] or not making the effort." Fed.R.Civ.P. 23.1(b)(3)(B). Moreover, "the courts will not entertain the shareholder's derivative suit unless the board's decision [to reject the shareholder's demand] can be proved not to have been a valid exercise of business judgment." In re Sonus Networks, Inc, S'holder Derivative Litig., 499 F.3d at 67 n. 11.

While the Verified Complaint clearly states that Driven Administrative Services, LLC ("Driven"), as the Bank's receiver, rejected Plaintiff's pre-suit demand, Plaintiff does not allege that this refusal was wrongful nor that it can be proved not to have been a valid exercise of Dirven's business judgment. Plaintiff's omissions defeat its claims, as the Verified Complaint does not meet the particularity standard to show that Plaintiff has the requisite managerial power to continue this derivative action. See Gonzalez Turul, 951 F.2d at 3 (1st Cir. 1991) (holding that a derivative action should be dismissed, after concluding the shareholder plaintiff did not meet the particularity standard, as she "did not even plead demand in general terms in her complaint, but instead made conclusionary arguments on appeal that demand should be excused as futile."); Aronson, 473 A.2d at 818 (holding that a derivative action should be dismissed, after concluding "that the plaintiff shareholder failed to allege facts with particularity indicating that the [corporation's] directors were tainted by interest, lacked independence, or took action contrary to [the corporation's] best

interests in order to create a reasonable doubt as to the applicability of the business judgment rule.”).[5]

Consequently, Plaintiff’s Verified Complaint should be dismissed with prejudice in its entirety.

**Plaintiff’s breach of fiduciary duty claim against Defendants is time-barred because the original complaint was filed outside of the one-year statute of limitations.**

The Puerto Rico Supreme Court has ruled that “an attorney’s civil liability… is based on the typical elements of all actions for damages against professionals.” Colón Prieto v. Géigel, 15 P.R. Offic. Trans. 313, 321 (P.R. 1984). “They are: (1) the existence of an attorney-client relationship giving rise to a duty; (2) that the attorney, either by act or omission, breaches it; (3) that said breach of duty be the proximate cause of the injury to the client; and (4) that the plaintiff client sustains actual damage or loss.” Id.; see *The cause of action*, 2 LEGAL MALPRACTICE § 15:2 (2023 ed.) (“As defined in this treatise, a fiduciary breach is legal malpractice, because it concerns the representation of a client and involves the fundamental aspects of an attorney-client relationship: (1) confidentiality; and (2) undivided loyalty.”)

In turn, “[p]rofessional malpractice actions are governed by sec. 1802 of the Civil Code, 31 L.P.R.A. § 5141, regardless of whether a contract is involved.”[6] Ortega et al. v. Pou et al., 135 DPR 711, 714 [1994 P.R.-Eng. 909, 288, P.R. Offic. Trans.] (P.R. 1994); see Chévere v. Cátala,

[5] In fact, since Plaintiff conspicuously omits any factual allegations attacking Driven’s refusal as wrongful, the Verified Complaint does not even meet the plausibility standard. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that a complaint must be dismissed because plaintiffs failed to plead “enough facts to state a claim to relief that is plausible on its face” and to “nudge[] their claims across the line from conceivable to plausible.”).

[6] This provision is currently found in Art. 1536 of the 2020 Puerto Rico Civil Code, 31 LPRA § 10802.

115 DPR 432, 445 [15 P.R. Offic. Trans. 572, 587–588] (P.R. 1984). Such actions carry a one-year statute of limitations. Ortega et al., *supra*; Art. 1204 (a) of the 2020 Puerto Rico Civil Code, P.R. Laws Ann. T. 31, § 9496; Alicea v. Córdova, 117 DPR 676 [17 P.R. Offic. Trans. 811] (P.R. 1986). Moreover, "the period of limitations starts to run 'from the time the aggrieved person had knowledge thereof,' which aspect presupposes a determination of the exact moment (*punctum temporis*) in which the damage is known or should have been known, and which must be put to the test and construed." Ortega et al., *supra*. at p. 715 of the Spanish version (the English version is not numbered) (*citing inter alia*, the prior Civil Code, P.R. Laws Ann. T. 31, § 5298, Art. 1868, and Rivera Encarnación v. E.L.A., 113 DPR 383, 385 [13 P.R. Offic. Trans. 498, 501] (P.R. 1982)). Accordingly, the Puerto Rico Supreme Court has ruled that, in legal malpractice cases, the applicable statute of limitations is the one-year term to file a tort claim, which begins to run from the moment the injured party learns or should have learned that they suffered damage and that this damage was caused by their lawyer. Col. Mayor Tecn. v. Rodríguez Fernández, 194 DPR 635, 646 (P.R. 2016).[7]

The Puerto Rico Supreme Court has further ruled that, "[t]his principle of the aggrieved person's knowledge is not breached just because the person does not know the scope or the sum of the damage caused." B.W.A.C. Int'l v. Quasar Co., 38 PR Offic. Trans. 10, 17 (1995) (*citing* Ortiz v. Municipio de Orocovis, 13 PR Offic. Trans. 619, 623 (1982)).[8] Following that ruling, the Court in B.W.A.C. deemed a tortious interference claim time-barred after concluding that its statute of limitations began accruing from the moment the plaintiff became aware of the identity

---

[7] A certified translation is included as **Exhibit B** (the translation was derived from the docket of another matter before this Court).

[8] A copy of this official translation is included with this motion, as it has not been published. See **Exhibit C**.

of the alleged tortfeasor or the party liable for the claimed tortious interference and, therefore, was in position to file a lawsuit against it. B.W.A.C., 38 PR Offic. Trans. at 17. In reaching that conclusion, the Court specifically stated as follows:

> More than once we have said that the statute of limitations promotes the notion that valid claims are exercised diligently and are not abandoned. Rivera Castillo v. Mun. de San Juan, 130 DPR 683 [30 PR Offic. Trans. 48] (1992); Culebra Enterprises Corp. v. E.L.A., 127 DPR 943 [27 PR Offic. Trans. 40] (1991). We cannot now approve of plaintiff's carelessness. It is clear that the damage was a perceptible reality since February 1987, when Quasar confirmed in a letter to BWAC its irreversible decision to appoint Panasonic as the new exclusive general distributor of Quasar products in Puerto Rico. BWAC knew, at the time, who was the tortfeasor or the one responsible for the alleged tortious interference, and was in a position to file suit against it. In light of this, we must conclude that the year to file suit had expired when BWAC brought its action on March 8, 1988. The period of limitations was never tolled; plaintiff thus lost its right to file a claim, if it ever had one. Id.[9]

According to the Verified Complaint, Plaintiff's claim against Domínguez for breach of fiduciary duty stems from an attorney-client relationship between her and the Bank that she breached by representing Díaz, whose interests conflicted with the interests of the bank. Verified Complaint, at ¶¶ 79-87. Count I is hence governed by Art. 1536 of the 2020 Puerto Rico Civil Code and, thus, subject to the one-year term to file tort actions established in Art. 1204 (a).

Plaintiff alleges that Domínguez, Díaz, and Faría breached their fiduciary duty by, among other things, "not obtain[ing] the Bank's informed consent nor a waiver of conflict [for Domínguez to] represent Díaz in a matter adverse to the Bank" and that as a "proximate result of their breach,

---

[9] In the referenced case, Borg Wagner International, Corp. ("BWAC") filed a complaint under Law 75 against Quasar Company ("Quasar"), claiming that it had unilaterally and without just cause terminated the existing business relationship with BWAC. In the same lawsuit BWAC included a tortious interference claim against Matsushita Electric of Puerto Rico ("MEP") under Puerto Rico's general tort statute. The Court concluded that the tortious interference claim against MEP was time-barred, as it was filed outside the one-year limitations period. The Court found that this period began to run from January 1987 because, according to the plaintiff's own admissions, by that date, BWAC was already aware of the identity of the alleged tortfeasor or the party liable for the claimed tortious interference and, therefore, was in position to file a lawsuit against it.

the Bank suffered damages." Verified Complaint, at ¶¶ 81, 86, and 87. To that end, Plaintiff alleges that "on February 28, 2022, Díaz entered into a plea agreement, which Domínguez signed as counsel of Díaz" and asks the court to take notice of the public criminal docket. Verified Complaint, at ¶ 71.

Furthermore, in an attempt to extend the statute of limitations of its claim, Plaintiff alleges that:

> 68. It was not until months later that the Shareholder learned about the scope of Domínguez's Engagement Letter to represent Díaz in a criminal investigation and how Bank's moneys were used to pay for said engagement.
>
> 69. These details were withheld from the Shareholder by Bank officers, and it was not until on or about September 2022 that the Shareholder learned about them through an independent audit.

However, even if accepted as true, these allegations fail to establish that Plaintiff did not become aware of the alleged damages until September 2022, regardless of their scope. Plaintiff does not allege that it did not know that Domínguez was representing Díaz in a criminal investigation, but only that it did not know the "scope" of the engagement until September 2022.

Plaintiff knew, or should have known, of the engagement and the scope of the representation since at least February 28, 2022, when Ms. Díaz entered the public plea agreement that supposedly conflicts with Ms. Domínguez's purported representation of the bank. Moreover, according to its own allegations, Plaintiff knew, or should have known, well before September 2022, that Díaz's representation was being paid for by the Bank, especially considering that Plaintiff specifically pleads that its "access to the Bank's information has been limited **since August 2022**." Verified Complaint, ¶4. This means that before August, on February 28, 2022, Plaintiff had access to the Bank's information and, thus, knew or should have known "how Bank moneys were used to pay for said engagement" well before September 2022, once the plea

agreement (and the scope of Domínguez's representation of Díaz) was made public and while it still had "access to the Bank's information."

In sum, Plaintiff knew or should have known of the alleged "proximate damages" due to the purported breach of fiduciary duty caused by Domínguez's representation of Díaz since at least February 28, 2022. At that moment, Plaintiff knew the identity of the alleged tortfeasors and, therefore, was in position to file a lawsuit against them. As previously discussed, allegations that a plaintiff "d[id] not know the scope or the sum of the damage caused" do not lengthen the statute of limitations. B.W.A.C., 38 PR Offic. Trans. at 17. Therefore, the one-year statute of limitations for the fiduciary duty claim began to run on February 28, 2022. Since Plaintiff filed the original Complaint on May 11, 2023, its breach of fiduciary duty claim is time-barred, and Count I should be dismissed with prejudice.

**Plaintiff's allegations in support of its nullity of contract claim do not meet the "particularity" requirements of Fed.R.Civ.P. 9.**

"Under Puerto Rico law, fraud which affects a contracting party is known as 'dolo' or deceit." P.C.M.E. Com., S.E. v. Pace Membership Warehouse, Inc., 952 F. Supp. 84, 92 (D.P.R. 1997) (*citing* Fournier v. Eastern Airlines, Inc., 655 F. Supp. 1037, 1038–1039 (D.P.R. 1987)). There are two basic applications of contractual "dolo": one refers to "dolo" in the formation of the contract, and the other refers to "dolo" in the performance of the contractual obligations. P.C.M.E. Com., S.E., 952 F. Supp. at 92; Marquez v. Torres Campos, 11 P.R. Offic. Trans. 1085, 1097 (P.R. 1982). As relevant to this case, under the first application "[t]here is "dolo" when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without, he would not have made." P.C.M.E. Com., S.E., 952 F. Supp. at 92 (citation omitted).

"'Dolo' could either be 'substantial' ('grave'), when it determines the consent of the parties, or 'incidental' when it merely influences the consent." Id.; see P.R. Laws Ann. T. 31, § 6211 (2020) ("Substantial deceit [(dolo)] is the intentional action or omission by which a party or a third party induces another party to grant a legal transaction that it would not otherwise have carried out") (our translation), and P.R. Laws Ann. T. 31, § 6213 (2020) ("Incidental deceit [(dolo)] does not invalidate the legal transaction, but its author must compensate the damage caused. Reciprocal deceit does not invalidate the business or require compensation") (our translation). Thus, "[i]n order that deceit may give rise to the nullity of a contract, it must be serious, as opposed to incidental, and must not have been employed by both of the contracting parties." Huongsten Prod. Imp. & Exp. Co. v. Sanco Metals LLC, 810 F. Supp.2d 418, 428 (D.P.R. 2011) (citation omitted); see Rodriguez–Bird v. Santander Securities Corp., Civil No. 09–2238, 2010 WL 2541708 at *3 (D.P.R. June 17, 2010) ("the law also draws a distinction between serious deceits and incidental deceits; only serious deceits will nullify a contract") (citation omitted).

In turn, Fed.R.Civ.P. 9 (b) provides, in pertinent part, that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Accordingly, "the procedure for pleading fraud in federal courts in all diversity suits is governed by the special pleading requirements of Federal Rule of Civil Procedure 9(b)." Hayduk v. Lanna, 775 F.2d 441, 443 (1st Cir. 1985) (*citing inter alia*, Simcox v. San Juan Shipyard, Inc., 754 F.2d 430, 439 n. 9 (1st Cir.1985)). "Thus, while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." Hayduk, 775 F.2d at 443; Simcox, 754 F.2d at 439; McGinty v. Beranger Volkswagon, Inc., 633 F.2d 226, 228–29 (1st Cir.1980). This means that, when "fraud lies at the core of the action, the

rule does not permit a complainant to file suit first, and subsequently to search for a cause of action." Hayduk, 775 F.2d at 443 (*citing inter alia*, Lopez v. Bulova Watch Co., Inc., 582 F. Supp. 755, 766 (D.R.I. 1984)).

"Moreover, in actions alleging conspiracy to defraud or conceal, the particularity requirements of Rule 9(b) must be met." Hayduk, 775 F.2d at 443 (citations omitted). As the First Circuit and other jurisdictions have ruled, "mere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk, 775 F.2d at 444 (*citing inter alia*, Segal v. Gordon, 467 F.2d 602, 607-608 (2d Cir. 1972), Robison v. Caster, 356 F.2d 924, 925 (7th Cir. 1966), Elster v. Alexander, 75 F.R.D. 458, 461-462 (N.D.Ga. 1977), and Chicago Title and Trust Co. v. Fox Theatres Corporation, 182 F. Supp. 18, 31 (S.D.N.Y. 1960)).

Additionally, "[t]he rule in Puerto Rico is that 'dolo', like fraud, is not presumed." P.C.M.E. Com., S.E., 952 F. Supp. at 92 (*citing* Miranda Soto v. Mena Ero, 9 P.R. Offic. Trans. 628, 634 (P.R. 1980)). "The party alleging 'dolo' bears the burden of proof" and must "demonstrate the intentional fault or bad faith of the person to whom it is imputed, given that good faith is presumed." P.C.M.E. Com., S.E., 952 F. Supp. at 92-93 (*citing* Citibank v. Dependable, 21 P.R. Offic. Trans. 496, 512 (P.R. 1987) and Canales v. Pan American, 12 P.R. Offic. Trans. 411, 424 (P.R. 1982)).

In support of Count II, Plaintiff alleges that, according to the Bank's Accounts Payable & Purchases Policy ("AP Policy"), the Engagement Letter required authorization of both the Bank's President/CEO and the COO but was only signed by the Bank's Chief Legal Counsel, Faría. Based on these allegations, Plaintiff concludes that "Díaz, Faria, DMR, and Domínguez concealed the

Engagement Letter from the Bank's COO by circumventing the AP Policy." Verified Complaint, ¶ 95. But they stop short of pleading specifics.

Plaintiff alleges in a hollow manner that "Faría, Díaz and Domínguez knowingly and intentionally concealed from the COO the execution of the Engagement Letter and the scope of the representation." Verified Complaint, ¶ 93. However, these allegations are vague and conclusory. Plaintiff fails to convey with particularity the exact alleged actions taken by the individual defendants to conceal the engagement from the COO.

As such, Plaintiff's allegations in Count II do not meet the "particularity" requirement imposed by Fed.R.Civ.P. 9 (b) and Puerto Rico law and should hence be dismissed with prejudice. See P.C.M.E. Com., S.E., 952 F. Supp. at 92-93; Hayduk, 775 F.2d at 443, 444.

**The unjust enrichment doctrine is inapplicable because Plaintiff has another legal precept to obtain redress for the alleged damages.**

"There are five elements to an unjust enrichment action: (1) existence of enrichment; (2) a correlative loss; (3) nexus between loss and enrichment; (4) lack of cause for enrichment, and (5) absence of a legal precept excluding application of enrichment without cause." Gov't of Puerto Rico v. Carpenter Co., 442 F. Supp.3d 464, 476–77 (D.P.R. 2020) (*citing* Hatton v. Mun. de Ponce, 1994 P.R.-Eng. 909,605, 134 D.P.R. 1001, 1010 (P.R. 1994) and Puerto Rico Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 97 (1st Cir. 2011)) (internal quotation marks omitted). The Supreme Court of Puerto Rico has ruled that, "in order for [the unjust enrichment doctrine] to take effect '… it would be necessary for the aggrieved person to have no other action to obtain redress.'" El Toro Elec. Corp. v. Zayas, 6 P.R. Offic. Trans. 133, 138 (1977) (citations omitted); see Ortiz-Andújar v. Commonwealth of Puerto Rico, 22 P.R. Offic. Trans. 774, 122 D.P.R. 817 (P.R. 1988).

Accordingly, this Court has recognized that "Under Puerto Rico law, unjust enrichment claims are available only in the absence of 'applicable statutes.'" Kress Stores of Puerto Rico, Inc.

v. Wal-Mart Puerto Rico, Inc., Civ. No. 20-01464 (WGY), 2021 WL 2912436 at *9 (D.P.R. July 9, 2021). See also Westernbank P.R. v. Kachkar, Civil No. 07-1606 (ADC/BJM), 2009 WL 6337949, at *29 (D.P.R. Dec. 10, 2009), R&R adopted, (D.P.R. Mar. 31, 2010)) ("Since several statutes are applicable to the case at issue, the doctrine of unjust enrichment is precluded."); Marrero-Rolon v. Autoridad de Energía Eléctrica de P.R., Civ. No. 15-1167 (JAG/SCC), 2015 WL 5719801, at *19 (D.P.R. Sept. 29, 2015), R&R adopted, (D.P.R. Mar. 31, 2016) ("Numerous courts in this district have held that this applies even at the pleading stage and in spite of the federal courts' general acceptance of alternative pleadings."); El Toro Elec. Corp. v. Zayas, 6 P.R. Offic. Trans. 133, 138 (1977) (holding that unjust enrichment claims cannot be sustained unless the plaintiff has "no other action to obtain redress") (quotations omitted).

In Kress Stores of Puerto Rico, Inc., for instance, Plaintiffs brought an unjust enrichment claim in the alternative to an unfair competition claim. There, the court granted the defendants' motion to dismiss plaintiffs' unjust enrichment claim, making clear that, "[b]ecause count I is cognizable under Article 1802… Article 1802 is the 'applicable statute' which precludes [the unjust enrichment claim]." Kress Stores of Puerto Rico, Inc., 2021 WL 2912436 at 9 (citations omitted).

Here, in support of Count I, which pleads a breach of fiduciary duty, Plaintiff alleges that "Faría, Díaz and Domínguez breached their fiduciary duties by, *inter alia*, failing to protect the Bank's interests; self-dealing and breaching the AP Policy by hiding the conflict representation of Díaz from the Bank while having the Bank unknowingly pay for it." Verified Complaint, at ¶ 86. Similarly, Count II alleges that "[a]s a result of their actions, the Bank unknowingly paid for Díaz's attorneys' fees." Verified Complaint, ¶ 96. Likewise, in support of Count III, its unjust enrichment claim, BHC "incorporates and re-alleges" all the prior allegations and pleads that "[d]uring the

Relevant Period, Díaz, DMR and Domínguez unjustly enriched themselves by wrongfully converting, taking, [sic] utilizing the moneys of the Bank." Verified Complaint, at ¶¶ 98-99. Counts I, II, and III are hence clearly based on the same set of facts and, given that Counts I and II muster applicable legal precepts that seek to redress those same purported facts—i.e., the breach of fiduciary duty claim which is predicated on the general tort statute of Puerto Rico and the nullity of contract claim also based on the Civil Code—Count III should be dismissed with prejudice as a matter of law.[10]

Respectfully submitted, in San Juan, Puerto Rico, on April 5, 2024.

WE CERTIFY that, on this same date, we filed this document using the CM/ECF filing system, which will send a copy to all counsel of record.

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, PR 00918
Tel: 787-705-2171

*s/Manuel A. Pietrantoni*
Manuel A. Pietrantoni
USDC-PR 219805
mpietrantoni@mpmlawpr.com

*s/Claudia S. Delbrey Ortiz*
Claudia S. Delbrey Ortiz
USDC-PR 309207
cdelbrey@mpmlawpr.com

[10] This conclusion is not affected by the fact that Count I is time-barred. See Westernbank Puerto Rico v. Kachkar, Civil No. 07-1606 (ADC/BJM), 2009 WL 6337949 at 29 (D.P.R. Dec. 10, 2009), report and recommendation adopted (D.P.R. Mar. 31, 2010) ("That the defendants have failed to plead these claims adequately to survive the motion to dismiss, or that Westernbank's affirmative defenses have defeated them, does not render the underlying tort and contract laws inapplicable to the situation.").