IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BANCRÉDITO HOLDING CORP., *DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT, BANCRÉDITO INTERNATIONAL BANK & TRUST CORP.*,

**Plaintiff,**

v.

DRIVEN ADMINISTRATIVE SERVICES, LLC, *et al.*,

**Defendants.**

**CIVIL NO.** 24-1036 (JAG)

MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Alberto G. Estrella and Stephanie M. Vilella's (collectively "Plaintiff's Attorneys") Response to this Court's Order to Show Cause. Docket No. 81. The Order to Show Cause stemmed from concerns regarding potential jurisdictional manipulation. *See* Docket No. 75 at 4-6. Specifically, the Verified Complaint in this case alleged that Plaintiff's principal office is located in New York. Docket No. 3 at 3. However, on the same day the present action was filed, Plaintiff's Attorneys initiated another case in this Court where they alleged that Plaintiff's principal place of business is Florida. *Bancrédito Holding Corp. v. Driven Admin. Services, LLC et al.*, Civ. No. 24-1039 (D. P.R. 2024), Docket No. 1 at 3. These conflicting pleadings as to BHC's citizenship reasonably perturbed the Court. *See* Docket No. 75 at 4-6.

As Plaintiff's Attorneys failed to sufficiently assuage the Court's uneasiness with their Response to the Motion to Dismiss, Docket No. 71, they were ordered to show cause "as to why their misrepresentations as to BHC's citizenship and the conflicting filings [did] not constitute a

violation of their obligations under Rule 11(b) and the Model Rules of Professional Conduct." Docket No. 75 at 12.

## DISCUSSION

As "the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by Rule 11," sanctions under FED. R. CIV. P. 11 are reviewed for abuse of discretion and district courts are granted wide latitude to tailor appropriate sanctions. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) ("A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."). "[A]ny findings of fact supporting that decision" are reviewed for "clear error." *Reinhardt v. Gulf Ins. Co.*, 489 F.3d 405, 416 (1st Cir. 2007) (citation omitted). "Because the imposition of sanctions is peculiarly within the province of the court in which the challenged conduct occurs, a party complaining to an appellate tribunal in respect to trial-level sanctions bears a heavy burden of demonstrating that the trial judge was clearly not justified in entering the order." *Id.* (cleaned up).

Rule 11 was drafted "to deter dilatory and abusive tactics in litigation and to streamline the litigation process by lessening frivolous claims or defenses." *Cruz v. Savage*, 896 F.2d 626, 630 (1st Cir. 1990) (citing FED. R. CIV. P. 11 advisory committee's notes). Under Rule 11(b), "attorneys [must] certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Enos v. Union Stone, Inc.*, 732 F.3d 45, 50 (1st Cir. 2013) (cleaned up). Improper purposes include harassment, causing unnecessary delays, and needlessly increasing cost of litigation. FED. R. CIV. P. 11. "[A] related goal of Rule 11 is to streamline the administration and procedure of the

federal courts." *CQ Int'l Co. v. Rochem Int'l, Inc., USA*, 659 F.3d 53, 62 (1st Cir. 2011) (cleaned up). Additionally, Rule 11 imposes ongoing obligations on counsel to reassess their proffered positions throughout the judicial process. *Kale v. Combined Ins. Co.*, 861 F.2d 746, 758 (1st Cir. 1988) ("Rule 11 imposes a duty on counsel to investigate their clients' claims before making any filings and to reassess them throughout the litigation.") (citation omitted); *see also* FED. R. CIV. P. 11 advisory committee's note ("[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."). While a Rule 11 violation does not require a showing of bad faith, it is not a strict liability provision. *Ark. Teacher Ret. Sys. v. State St. Corp.*, 25 F.4th 55, 64 (1st Cir. 2022). Rather, "a lawyer who makes an inaccurate factual representation must, at the very least, be culpably careless to commit a violation." *Id.*; *see also CQ Int'l Co.*, 659 F.3d at 60. "Whether a litigant breaches his or her duty under Rule 11 to conduct a reasonable inquiry into the facts and the law depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances." *CQ Int'l Co.*, 659 F.3d at 62-63 (cleaned up).

Similarly, the Model Rules of Professional Conduct impose ethical and professional obligations of candor toward the tribunal. This Court has adopted the American Bar Association's Model Rules of Professional Conduct. *See* D.P.R. Local Civ. R. 83E(a) ("[E]ach attorney admitted or permitted to practice before this court shall comply with the standards of professional conduct required by the Model Rules of Professional Conduct . . . ."). The Model Rules provide that "[a] lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." MODEL RULES OF PRO. CONDUCT r. 3.3(a)(1) (AM. BAR ASS'N). A lack of candor "implies a

misrepresentation (or, at least, a withholding) of pertinent information." *In re Plaza-Martínez*, 747 F.3d 10, 13 (1st Cir. 2014) (citation omitted). A lawyer's duty of candor is heightened under Model Rule 3.3(d) when filing *ex parte*. *See* MODEL RULES OF PRO. CONDUCT r. 3.3(d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.").

Per Plaintiff's Attorneys, the entire confusion regarding BHC's citizenship boils down to a copy-paste error, because the present Complaint was drafted using as a template a nearly identical 2023 complaint, which was subsequently dismissed voluntarily. Docket No. 81 at 2; *see also* Docket No. 81-1 at 3. The 2023 complaint stated that BHC is a corporation duly registered in New York with its principal place of business in that state. Docket No. 81-1 at 3. Plaintiff's Attorneys maintain that "said information was consistent with the information the undersigned had available" when the 2023 complaint was filed. Docket No. 81 at 2. Thus, Plaintiff's Attorneys argue that the inconsistencies plaguing their simultaneous submissions were "purely an inadvertent error of omission," whereby they failed to appropriately edit the parties' description to include BHC's Floridian principal office while incorporating portions of the 2023 complaint during the drafting process of the present Complaint.[1] *Id.* Furthermore, Plaintiff's Attorneys assert "that they did not have knowledge of Defendant [DMR Law LLC[2]]'s domicile in Florida until after

---

[1] The Court does however note that the addresses of BHC's principal office are slightly varied between the 2023 complaint and the present Complaint, which indicates some manipulation beyond a simple copy-paste action or omission. *Compare* Docket No. 3 at 3 ("Plaintiff is a corporation duly registered under the laws of the State of New York with its principal office located at 575 **5th Avenue, Floor 14th, New York, NY** 100017.") (emphasis added) *with* Docket No. 81-1 at 3 ("Plaintiff is a corporation duly registered under the laws of the State of New York with its principal office located at 575 **5th Avenue, Suite 17-143, New York**, 100017.") (emphasis added).

[2] Previously known as DMRA Law LLC. Docket No. 32 at 1.

they reviewed DMR's motion to dismiss."[3] Docket No. 81 at 3. Therefore, Plaintiff's Attorneys contend that, when the present Complaint was filed, they genuinely believed that DMR was only a citizen of Puerto Rico—not Florida—and, thus, that complete diversity existed. Consequently, the omission of BHC's Floridian citizenship could not have emanated from a desire to manipulate this Court's jurisdiction. Docket No. 81 at 3.[4] In light of such, the Court finds that the omission of BHC's Floridian citizenship, in isolation, does not warrant Rule 11 sanctions.

However, as discussed above, ethical and professional obligations of candor require lawyers "to correct a false statement of material fact or law previously made to the tribunal by the lawyer" and to reassess positions contained in the pleadings. MODEL RULES OF PRO. CONDUCT r. 3.3(a)(1); *see also* FED. R. CIV. P. 11 advisory committee's note ("a litigant's obligations . . . include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."). Circuit Courts have found that a counsel's duty of candor includes "a duty to raise alleged defects in subject-matter jurisdiction when they first become apparent, not merely when doing so becomes strategically expedient." *I.L. v. Alabama*, 739 F.3d 1273, 1284 n.6 (11th Cir. 2014); *see, e.g.*, *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 734 (7th Cir. 2014) (underscoring that counsel "had an ethical duty to alert the court" to a development that "affects subject-matter jurisdiction."); *Aves ex rel. Aves v. Shah*, 997 F.2d 762, 767 (10th Cir. 1993) ("[W]hile subject matter jurisdiction enjoys a special status . . . as an officer of the court, candor

[3] The Court notes that Plaintiff's Attorneys were aware that Defendant María A. Domínguez-Victoriano was a member and employee of DMR, and was licensed to practice law in Florida and Connecticut prior to initiating the present action. *See Bancrédito Holding Corp. v. DMRA Law LLC, et al.*, Civ. No. 23-1238 (D. P.R. 2023), Docket No. 31 at 4.

[4] As discussed at Docket No. 75, the simultaneous filing in Civ. No. 24-1039 pleaded that BHC "is a New York corporation . . . [whose] *principal place of business is Florida*." *Driven Admin. Services*, Civ. No. 24-1039, Docket No. 36 at 4 (emphasis added).

and honesty are not only expected, they are demanded. The 'tactic' of [stipulating to subject-matter jurisdiction at the district court], while planning to challenge jurisdiction if an appeal becomes necessary, will not be tolerated.").

Plaintiff's Attorneys do not sufficiently address their lack of attempt to repair the misstatement of citizenship nor their failure to inform the Court of the defect in subject-matter jurisdiction even though they admitted learning of the jurisdictional issue when they reviewed DMR's Motion to Dismiss, which was filed seven months before the Order to Show Cause was issued. *See* Docket Nos. 42; 68. Rather, Plaintiff's Attorneys, once made aware that the Court did not possess subject matter jurisdiction, requested multiple extensions of time to respond to the Motion to Dismiss. *See* Docket Nos. 37; 42; 51. Nevertheless, it was only after this Court ordered briefing as to BHC's citizenship that Plaintiff's Attorneys "revisited their assessment of the case with BHC . . . [and] [a]fter careful consideration . . . believed that BHC could not move for a voluntary dismissal of this case, as BHC had previously moved for voluntary dismissal in the previous action." Docket No. 81 at 3. The Court understands that Plaintiff's Attorneys were hesitant to voluntarily dismiss this action due to FED R. CIV. P. 41 ("Rule 41") concerns.[5]

---

[5] Rule 41 provides that, when a plaintiff has previously voluntarily dismissed "any federal—or state—court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." FED R. CIV. P. 41(a)(1)(B). "Both Rule 41(a)(1) and Rule 11 are aimed at curbing abuses of the judicial system, and thus their policies, like their language, are completely compatible." *Cooter & Gell*, 496 U.S. at 397. The Supreme Court has stated:

> Rule 41(a)(1) . . . was designed to limit a plaintiff's ability to dismiss an action. Prior to the promulgation of the Federal Rules, liberal state and federal procedural rules often allowed dismissals or nonsuits as a matter of right up until the entry of the verdict or judgment. Rule 41(a)(1) was designed to curb abuses of these nonsuit rules [by] eliminat[ing] the annoying of a defendant by being summoned into court in successive actions and then, if no settlement is arrived at, requiring him to permit the action to be dismissed and another one commenced at leisure.

*Id.* (cleaned up). Plaintiff's Attorneys do little to qualm fears of successive actions as they appear to concede the possibility of filing another suit. *See* Docket No. 85 at 2 ("To the extent that DMRA Law LLC and María

Notwithstanding, these concerns do not explain or justify their actions. Nor do such concerns exempt Plaintiff's Attorneys from the Federal Rules of Civil Procedure and the Model Rules of Professional Conduct.

At the same time, during the seven-month interim between the filing of the Motion to Dismiss and the issuance of the Order to Show Cause, co-Defendant Frances Díaz ("co-Defendant Díaz") had yet to file a response pleading to the present Complaint due to difficulties with several court appointed counsel. *See* Docket Nos. 41; 48; 49; 53; 59. Subsequently on June 21, 2024, after two requests for additional time to respond to the Motion to Dismiss and more than two months after Plaintiff's Attorneys were aware of the fatal jurisdictional flaw, they requested a third "extension of time until 14 days after Díaz files her responsive pleading for BCH (*sic*) to file an omnibus opposition to the pending Motions to Dismiss . . . and to any potential motion to dismiss that Díaz may file." Docket No. 57 at 3. Thus, despite knowing that the Court lacked diversity jurisdiction and aware of the ongoing troubles to secure *pro bono* counsel for co-Defendant Díaz, Plaintiff's Attorneys opted to needlessly delay this litigation and waste the resources and time of this tribunal and appointed counsel by requesting an extension of time contingent on a co-defendant's responsive pleading to a complaint they knew could not proceed. Rather than inform the Court of the jurisdictional flaw, respond to the Motion to Dismiss, or voluntarily dismiss the present action, Plaintiff's Attorneys' conduct wasted already limited *pro bono* resources. Since Plaintiff's Attorneys had been made aware the Court lacked jurisdiction over the Complaint, the Court appointed three *pro bono* attorneys for co-Defendant Díaz—each of whom was ordered to

---

A. Domínguez-Victoriano are concerned about a potential refiling of this action, the Court's Opinion at ECF No. 75 explains, in relevant part, that diversity of citizenship is to be determined at the time the suit was initiated.") (cleaned up).

meet and confer with her, and prepare a responsive pleading to the Complaint. *See* Docket Nos. 49; 60; 65. It is the waste of these scarce resources aimed to assist those in need that the Court finds most egregious.

Pursuant to their obligations under Rule 11 and the Model Rules of Professional Conduct, Plaintiff's Attorneys should have either conceded the lack of diversity jurisdiction, or simply responded to the Motion to Dismiss and allowed the Court to dismiss for lack of subject matter jurisdiction. Sitting idly by as the Court is misled, litigation is needlessly delayed, costs are unnecessarily multiplied, and valuable *pro bono* resources are expended is not an acceptable course of action. While Plaintiff's Attorneys claim "they did not intend to mislead or misrepresent any issue to this Court," Docket No. 81 at 4, they did; and they delayed the inevitable dismissal of this case, wasting the time and resources of this Court and Defendants. Plaintiff's Attorneys have presented no justification for their lack of candor with this tribunal and have not sufficiently explained why, once made aware of DMR's Floridian citizenship and thus the lack of diversity jurisdiction, they did not make any attempt to rectify the matter but rather took actions which only caused unnecessary delay and needlessly increased costs. Accordingly, the Court finds that Plaintiff's Attorneys violated their obligations under Rule 11 and the Model Code of Ethics.

## CONCLUSION

Plaintiff's Attorneys knew the Court did not possess subject matter jurisdiction, but feared losing their right to refile the present suit at a later date, they knowingly proceeded to cause unnecessary delay and needlessly increase litigation costs, possibly to avoid the embarrassment of conceding a drafting error. Docket No. 81 at 2. The Court will not turn a blind eye to the attempts of counsel to skirt their obligations under Rule 11 and the Model Code. Accordingly, the

Court finds that Plaintiff's Attorneys violated Rule 11 and, thus, **ORDERS** Plaintiff's Attorneys to perform fifteen hours of *pro bono* services each as sanction for the violation.[6]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, September 08, 2025.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge

---

[6] The fifteen hours represent five hours for each *pro bono* attorney appointed and ordered to confer with co-Defendant Díaz, all of which occurred after Plaintiff's Attorneys were aware the Court did not have subject matter jurisdiction. The First Circuit has found sanctions to perform *pro bono* services are appropriate under Rule 11. *See Reinhardt*, 489 F.3d at 417 (finding that a sanction "to perform ten hours of pro bono service . . . is not out of proportion to the violation" when counsel "unnecessarily forc[ed] defendants to litigate [an] issue and [took] up court time and consequently burden[ed] other individuals' rights to come before the court in a timely manner to have their issues litigated.") (cleaned up).